SARAH W. BOARDMAN *vs.* EDWIN A. BOARDMAN & others.

A testator in his will gave to his wife his dwelling-house, furniture, silver plate, spoons notes, mortgages with the notes to the same, books, papers, &c.; appropriated a small sum to keep his lot in a cemetery in order; gave to his son E. $3000, " in one year, if it can be collected by my demands, which can be demanded; they are due; " to his other sons various sums, to be paid at different times; provided that if his wife should marry again his real and personal estate should revert to his heirs at law; directed her from time to time to present gifts from him to his grandchildren and to his sons, at her discretion; and finally gave to her for life all the residue of his personal and real estate. At the time of making this will, he had outstanding overdue notes, to the amount of

$8000, the makers of which were then and have ever since been insolvent. He left real estate to the amount of about $14,000, and personal estate, consisting entirely of notes, furniture and silver plate, to the amount of about $12,000; the notes, which were good, were all taken after the execution of the will. *Held,* that the legacies to his sons were all payable absolutely, out of the personal estate, and that to his son E. within such period, not less than one year, as should be found reasonably necessary to collect it from debts due to the estate.

BILL IN EQUITY by the executrix of the will of Benjamin G. Boardman, asking the instruction of this court in the settlement of his estate. The legatees and heirs at law were made parties to the bill. The material portions of the will are copied in the margin,* and the following facts were agreed:

---

* "*Firstly.* I give to my wife Sarah my dwelling-house as now stands, together with all the land, furniture, silver plate, spoons, notes, mortgages with the notes to the same, my books, papers, &c., chattels, at the time of my decease. I direct and order the sum of thirty dollars to be invested safe, the interest to be added on the same, and for repairs, when may be wanted, on my lot at Mount Auburn, No. 208, this sum must remain interest, and when wanted to repair only; and if attention to the lot this will accumulate. I give to my son Edwin Augustus three thousand dollars, $3000, in one year, if it can be collected by my demands which can be demanded; they are due. I give to my son Benjamin Greenleaf five hundred dollars, to be paid him in two years after my decease.

"I give to my son Chas. White one thousand dollars, in eighteen months after my decease; my request is Chas. W. to have it invested safe and add the interest.

"I give to my son Moses Brown five hundred dollars, to be paid in one year after my decease.

"My will and desire is, if my wife Sarah should be married again and not remain my widow, that my real and personal estate shall revert to my heirs at law. My will is, that my wife, the executrix, shall, from time to time, present as gifts from me, and through her, to my grandchildren, as her judgment may dictate, also to my sons, as her pleasure may dictate. I submit all to her own judgment and confide in her to make any small presents. My estate can be closed without much expense, as no appraisement will be made.

"*And lastly.* As to all the rest, residue and remainder of my personal and real estate, goods and chattels of what kind and nature soever, I give and bequeath the same to my said wife Sarah, during her life only, whom I hereby appoint sole executrix of this my last will and testament. The words 'estate and 'real' interlined by me before signed. My desire to your Hon. that you request no bondsman from my wife, as no mistake in the trust and discharge of her duty.                                    Benjamin Greenleaf Boardman.

"In witness whereof I have hereunto set my hand and seal, and publish and

The testator died in March 1858, the will was duly proved, the plaintiff duly filed an inventory of the estate, including real estate to the amount of about $14,000, furniture and silver plate to the amount of $450, and various notes, one of which was against his son Edwin Augustus Boardman for $1000, and several of which were secured by mortgages, to the amount in all of $11,477.64. All of these notes and mortgages were taken after the date of the will and codicil, and are worth fully or nearly the amount at which they were estimated in the inventory. At the date of the will and codicil, the testator held outstanding overdue notes, not barred by the statute of limitations, to the amount of at least $8000, the makers of which were then and have ever since been insolvent.

*J. G. Abbott & B. Dean,* for the plaintiff. The legacy to Edwin Augustus Boardman is given conditionally, if it can be collected out of demands then due; out of a fund then in existence. The testator was contemplating what he then had, and his gift was founded upon that. This is not like the class of cases where there is an absolute gift, with a provision that it shall be paid out of a particular fund, which has failed. In this case, the legacy is conditional, and not demonstrative.

If payable at all, it is not from the personal property, but must be raised out of the undevised real estate. The provision for the widow is in lieu of dower, and ought not to be diminished to pay a legacy, where there is undevised estate. *Pollard* v. *Pollard,* 1 Allen, 490. *Hubbard* v. *Hubbard,* 6 Met. 50. The other legacies are to be raised in the same way.

*H. G. Hutchins,* for the defendants.

HOAR, J. The will, which the court are asked to construe in this case, is drawn in so confused and contradictory a manner that it is extremely difficult to find any intelligible and consistent

---

declare this to be my last will and testament in the presence of two witnesses, named below, this nineteenth day of July, in the year of our Lord one thousand eight hundred and fifty-two.         Benjamin Greenleaf Boardman.

" Before signed, during her life only my will and desire."

[The will was duly attested, and, on the 20th of February 1854, a codicil was added, diminishing the legacy to Charles White Boardman to $500.]

meaning to it. In the first testamentary clause the testator says, " I give to my wife Sarah my dwelling-house as now stands, together with all the land, furniture, silver plate, spoons, notes, mortgages with the notes to the same, my books, papers, &c., chattels, at the time of my decease." He left no personal estate at his decease, excepting such as is embraced in this de scription ; and it is not shown, nor does there appear any reason to suppose, that he had any other at the time the will was made He left a considerable amount of real estate, beside the home- stead mentioned in this clause. The will next appropriates thirty dollars to keep in repair his lot at Mount Auburn, and then gives legacies in money to each of his sons, payable at dif- ferent periods. It then provides that if his wife should marry again, his real and personal estate should revert to his heirs at law. It then directs his wife to make presents from time to time to his children and grandchildren, at her discretion ; and gives his wife " all the rest, residue and remainder of his per- sonal and real estate, goods and chattels of what kind and na- ture soever, during her life only," and makes her his executrix. After the testator's signature, and before the clause of attesta- tion, these words appear : " Before signed, during her life only my will and desire." He recites that he executes the will in the presence of two witnesses, but it is actually attested by three.

The first question arises upon the legacy to his son Edwin Augustus, which is in these words : " I give to my son Edwin Augustus three thousand dollars, in one year, if it can be col- lected by my demands which can be demanded ; they are due." It appears that, at the time the will was made, the testator had several notes due to him from persons who were insolvent, which have never been paid, and are now of no value ; and the executrix contends that these were the demands referred to, and that the legacy is conditional upon the amount to be collected from these notes.

If it were clearly shown that these notes were the " demands" referred to, it would not relieve the inconsistency of the will. The testator had previously given all his " notes " to his wife, and the bequest would include these as well as others. But

there is no evidence that these worthless "demands" were intended as the fund on the value of which the legacy was made to depend. On the contrary, we are to suppose that the legacy was intended to be a substantial and beneficial one. It is larger than that given to either of his other children, and made payable sooner than some of them. And we are all of opinion that the condition of the legacy was only as to the time within which it should be payable, but that the legacy itself was absolute; the time of payment being postponed only in case the executrix was unable, with reasonable diligence, to collect the amount within one year from the debts due to the estate. The only construction which will then give effect to the various provisions of the will, is to hold that the testator meant to make this legacy to his son a charge upon the personal estate already given to his wife. It is certainly to be paid from the personal estate, from "demands," that is, from money due, which excludes the idea that it was intended to be raised by a sale of the undevised reversion of the real estate. Besides; it is extremely improbable that a testator would intend that simple legacies of money should be raised from the sale of a reversion of real estate, when the reversion descended to the same persons who would receive the legacies, and when he possessed ample pecuniary means to pay them. Especially would this be true in regard to the small appropriation of thirty dollars, for the preservation of his lot in the burial ground. Yet that, and the legacies to his sons, stand on the same footing.

We therefore think that, although not directly expressed, the meaning of the testator was that he would give his whole personal estate to his wife, subject to the payment of the pecuniary legacies which follow. The residuary clause, including in the devise to her for life not only the residue of his real estate, but also all his personal estate, goods and chattels, when the whole of these had been previously given without limitation, it is not easy to account for, unless it was made from an apprehension that the terms used might not embrace everything which he intended.

A decree is to be entered that the legacy to Edwin Augustus

is payable absolutely from the personal estate of the testator, within such period, not less than one year after his decease, as shall be found reasonably necessary to collect it from debts due to the estate; the note of the legatee being of course available *pro tanto;* and that the legacies to the other sons are payable in like manner, at the times named in the will.